Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 566 | DATE | Nov. 8, 2002 |
| CASE TITLE | Mohammed Mirza v Fleet Retail IFinance | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]
     Memorandum opinion and order entered. Defendant's motion for summary judgment is granted with respect to count I of the complaint and denied with respect to count II, to the extent that count II is not based on plaintiff's services as a loan finder.
(11) ■ [For further detail see order attached to the original minute order.]

| X | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | NOV 1 3 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 28 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | 02 NOV 12 PM 3:41 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**NOV 1 3 2002**

MOHAMMED MIRZA, d/b/a Samir Financial )
Services, Inc., )
)
               Plaintiff, )
)    No.    01 C 0566
v. )
)    Judge Robert W. Gettleman
FLEET RETAIL FINANCE, INC., )
)
               Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Mohammed Mirza brought this suit against defendant Fleet Retail Finance, Inc., seeking a $750,000 commission arising out of a $150 million loan agreement between defendant and Phar-Mor, Inc. In the complaint, plaintiff asserts breach of contract and quantum meruit as alternative theories of relief. After extensive discovery, defendant moved for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons discussed below, defendant's motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Mohammed Mirza, doing business as Samir Financial Services, Inc. ("Samir"), an Illinois corporation, arranges financing for companies. To this end, plaintiff targets companies that are losing money and introduces them to potential lenders. If the target company and lender close a deal, plaintiff collects a fee from the lender for matching the two entities. In contrast to investment banks, plaintiff operates on a non-exclusive basis, and thus may create competition among several lenders on a given loan. Generally, plaintiff's fee agreements are oral rather than written, although the financial terms of the fee are typically incorporated into the

loan itself. Since the inception of his business in 1991, plaintiff has collected fees from General Electric, Congress Financial Corporation, CIT Business Credit, Heller Financial Corporation, Coast Business Credit, First Source Financial Corporation, Provident Bank, and Fleet Bank Business Credit.

In 1998, plaintiff contacted the chief financial officer ("CFO") of Phar-Mor, Inc. ("Phar-Mor"), Shankar Krishnan. At that time, Krishnan indicated that Phar-Mor was trying to replace Bank of America ("BOA") as its lead lender. Plaintiff then contacted Barbara Anderson, a business development officer at defendant Fleet Retail Finance, Inc. ("Fleet," formerly, Bank of Boston), a Delaware corporation headquartered in Boston, Massachusetts, that is a major lender for the retail sector. Plaintiff informed Anderson of Phar-Mor's financing needs, and subsequently met with Anderson and Ward Mooney, Fleet's president, in Chicago in March 1998.[1] Plaintiff also arranged a meeting between Mooney, Anderson and Krishnan at Phar-Mor's offices in Youngstown, Ohio. Although defendant submitted a proposal to Phar-Mor, Phar-Mor ultimately retained BOA as its lead lender during the summer of 1998. During the next two years, plaintiff maintains that he telephoned Krishnan approximately every six months to stay in touch, although Krishnan does not recall being contacted by plaintiff.

In June 2000, Cheryl Carner, another business development officer at Fleet, received a phone call from Rick Briggs of the Nassi Group, informing her that Phar-Mor might be looking

---

[1] At his deposition, plaintiff testified that, during lunch, Mooney and Anderson agreed to pay him a fee of 1/2% in the event that Phar-Mor selected defendant as its lender.

for new financing.[2] Carner subsequently called Phar-Mor and asked to speak with the chief financial officer. Her call was directed to Martin Seekely, who had replaced Krishnan.[3] Carner did not speak to Seekely at that time, and the parties dispute whether Carner then left Seekely a voice mail message asking him to return her call. In his deposition, Seekely testified that he could not recall whether Carner had left him a voice mail message.

Shortly thereafter, and before Carner received a return phone call from Seekely, Mooney suggested that Carner call plaintiff. The parties disagree as to the purpose of the phone call, however. Plaintiff maintains that Mooney suggested calling plaintiff "to seek help in getting through to Phar-Mor," whereas defendant contends that the call was "to see if [plaintiff] had any additional information about the transaction."

During her conversation with plaintiff, Carner learned that plaintiff was unaware that Phar-Mor was in the market for new financing. Beyond that, the substance of Carner and Mirza's conversation, as well as the events that took place thereafter, are fiercely disputed.

Plaintiff maintains that Carner asked Mirza to introduce her to Krishnan. According to plaintiff, when he contacted Krishnan, he learned that Seekely had replaced Krishnan, and plaintiff encouraged Krishnan to have Seekely return Carner's phone call. Carner testified, however, that Mirza offered to call Krishnan, at which point Carner informed him that Seekely

---

[2] Plaintiff asserts that the substance of the conversation between Briggs and Carner, as described by Carner in her deposition, is hearsay and unsubstantiated by direct evidence from Briggs himself. Nonetheless, plaintiff implicitly concedes, p.3, that he did not bring the potential 2000 Phar-Mor deal to defendant's attention.

[3] Plaintiff admits only that Carner testified to this effect, and Seekely testified in his deposition that he "believe[d]" Carner called him.

3

had replaced Krishnan as CFO. Thereafter, according to Carner's testimony, plaintiff offered to contact Krishnan at his home on Fleet's behalf.

Seekely ultimately called Carner, but did not recall a conversation with Krishnan, plaintiff or anyone else advising or suggesting that he return Carner's call. Seekely and Carner scheduled a meeting at Seekely's office for June 27, 2000. On June 14, 2000, plaintiff sent a letter to Mooney and Carner explaining the financing needs of Phar-Mor. According to Carner's deposition, she already knew the "majority" of information contained in the letter, except for Phar-Mor's desire to use its credit line to retire some bonds. On June 16, 2000, in a section of Fleet's database titled, "Deal Notes," Carner noted that "Mohamed Mizra (sic) from Samir Financial Services contacted the CFO and obtained the following information on the current deal: [BOA] is agent with GMAC, Heller and LaSalle as participants; Line size is $100MM at Libor + 250 with 58% advance rate; Company is interested in a larger line (up to $150MM) and wants to utilize availability to retire some bonds."

The extent of plaintiff's contacts with Phar-Mor and defendant thereafter is disputed. Plaintiff has produced telephone records indicating several calls to Mooney, Seekely and Carner through December 2000, and testified that Carner called him on several occasions during June, July and August. Mooney and Carner testified in their depositions that they do not recall these phone calls, however. To the extent that Seekely recalls speaking with plaintiff, their conversations did not involve Phar-Mor, but rather focused on GE Capital and IBJ Whitehall, who were in competition with defendant for Phar-Mor's loan.

In his response to defendant's interrogatories, plaintiff alleged a June 2000 conversation during which Mooney and Carner agreed to pay him a finder's fee of ½%. Moreover, in a July 6,

4

2000, letter to Mooney, plaintiff wrote, "Mr. Mooney, hopefully this time you might win this deal. I want ½% on total line as my fee at closing from you. If you have any questions about it please let me know. Your early response will be appreciated."[4] Mooney testified, however, that he did not receive this letter and did not recall discussing plaintiff's fees during June 2000. Rather, according to Mooney, he first learned that plaintiff was seeking a finder's fee in November 2000, after the deal between Fleet and Phar-Mor closed for $150 million. Defendant refused to pay plaintiff's claimed ½% fee ($750,000), and the instant litigation ensued.

## ANALYSIS

Fed. R. Civ. P. 56(c) provides that summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In considering a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party, and gives the nonmoving party the benefit of all reasonable or justifiable inferences to be drawn from the facts. Rand v. C.F. Industries, Inc., 42 F.3d 1139, 1146 (7th Cir. 1994).

In his complaint, plaintiff asserts two theories of relief: breach of oral contract and quantum meruit. In its motion for summary judgment, defendant maintains that the purported oral agreement between plaintiff and defendant was too vague to be enforceable and is barred by the statute of frauds. Further, even assuming the terms of an enforceable contract as described by plaintiff, defendant contends that plaintiff failed to perform and is therefore not entitled to his

---

[4] Plaintiff testified in his deposition that the terms of the agreement, as he understood them, were as follows: "I'm supposed to introduce a borrower to Fleet and will make sure that if the deal gets closed funded by Fleet Bank, I get paid.... [W]henever I introduce the borrower to the lender on any transaction that's where their contract come into the picture."

fee. With respect to plaintiff's quantum meruit claim, defendant contends that the undisputed facts establish that plaintiff was not the procuring cause of the transaction between Fleet and Phar-Mor and is therefore not entitled to his 1/2% fee. For the reasons discussed below, the court grants defendant's motion for summary judgment with respect to plaintiff's contract claim, but denies the motion with respect to plaintiff's quantum meruit claim.

In the complaint, plaintiff describes the purported contract on which he bases his breach of contract claim as follows:

> On or about June 2000, [the parties] entered into an oral contract wherein Fleet agreed that if it loaned Phar-Mor money, Fleet agreed to pay Mirza a commission, in return for Mirza's <u>loan finding services in presenting Phar-Mor to Fleet</u> and supplying Fleet with Phar-Mor's borrowing request and financial information. Mirza and Fleet agreed on a fee of one half percent on the total of any loan made to Phar-Mor. (Emphasis added.)

According to his own testimony, plaintiff's finders contracts arise whenever he "introduces the borrower to the lender on any transaction." Further, in his response to defendant's motion for summary judgment, plaintiff describes the role of a finder as "an intermediary who contracts to introduce parties to a business opportunity, leaving the ultimate negotiation and consummation of the business transaction to the principal" (citation omitted).

Under Illinois law,[5] in order to earn a commission, a business opportunity broker or finder must be the procuring cause of the transaction unless the contract between the parties specifies otherwise. See, e.g., Hennessy v. Schmidt, 521 F.2d 1282 (7th Cir. 1282); Modern Tackle Co. v. Bradley Industries, Inc., 11 Ill. App. 3d 502, 508 (1st Dist. 1973). The court recognizes that whether a business opportunity finder was actually a procuring cause is generally a question of

---

[5]When neither party raises a conflict of law issue in a diversity case, the federal court may apply the law of the state in which the federal court sits. R.E. Wood, Jr. v. Mid-Valley Inc., 942 F.2d 425, 426 (7th Cir. 1991).

6

fact. Modern Tackle, 11 Ill. App. 3d at 508. Nonetheless, because the undisputed facts dictate the conclusion that plaintiff did not bring the 2000 loan opportunity to the attention of defendant, the court concludes that no reasonable jury could find that plaintiff is entitled to a finder's fee for the 2000 loan agreement between defendant and Phar-Mor.

In the instant case, Carner knew that Phar-Mor was in need of new financing before calling plaintiff. Whether this information came to her attention through Briggs or some other source is immaterial, because plaintiff has not produced any evidence suggesting that he in fact "found" the loan for defendant. In fact, plaintiff admits that he did not know of Phar-Mor's financing needs prior to his June 2000 telephone conversation with Carner. This admission belies plaintiff's claim that he "introduced" Fleet to this business opportunity with Phar-Mor, as the term intuitively applies to loan finders.[6] Accordingly, the court grants defendant's motion for summary judgment with respect to plaintiff's breach of contract claim.

This is not to say, however, that plaintiff is not entitled to at least some compensation for the services that he provided. To this end, in Count II for quantum meruit, plaintiff states:

> If this court finds the contract between Mirza and Fleet unenforceable, Mirza alleges that he supplied his services and efforts required by and at the specific request of Fleet. Mirza diligently <u>completed all the services requested by Fleet</u> in presenting Phar-Mor to Fleet and supplying Fleet with Phar-Mor's borrowing request and financial information. (Emphasis added.)

---

[6] That plaintiff may have brought the 1998 loan opportunity to Fleet's attention does not alter the court's analysis, since the parties agree that the 2000 loan was a distinct transaction. See Lirtzman v. Fuqua Industries, Inc., 677 F.2d 548, 555 (7th Cir. 1982). Moreover, plaintiff's admission that he was representing defendant's competitors during the ensuing negotiations for the 2000 loan undermines any claim that he was responsible for, and hence the procuring cause of, the ultimate consummation of defendant's deal with Phar-Mor.

7

In contrast to the plain language of his contract claim, discussed above, plaintiff does not seek quantum meruit recovery for his activities as a loan finder per se. Rather, the basis for plaintiff's quantum meruit claim appears to be the information that he provided to defendant and the effort he allegedly expended to ensure that Phar-Mor returned Carner's phone call. Accordingly, granting summary judgment for defendant on plaintiff's contract claim does not necessarily dictate granting summary judgment for defendant on the quantum meruit claim.

To recover under a theory of quantum meruit, plaintiff must demonstrate: (1) that plaintiff performed services, and (2) the receipt by the defendant from the plaintiff of a benefit that it would be unjust for him to retain without paying the plaintiff. O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc., 51 Ill. App. 3d 11, 15 (3d Dist. 1977).

In the instant case, summary judgment is inappropriate because disputed facts exist with respect to both of the elements of plaintiff's quantum meruit claim. For example, plaintiff has produced phone records that chronicle a series of calls to Mooney, Carner and Seekely during June, July and August 2000. Defendant urges the court to disregard these records, maintaining that plaintiff has not produced evidence that he actually reached those individuals. Defendant's spin on the facts in unavailing, however, because the court does not sit as a trier of fact when considering a motion for summary judgment. As noted earlier, in ruling on the instant motion the court must construe the facts in the light most favorable to plaintiff.

Similarly, although Mooney and Carner disclaimed any interest in using plaintiff's Phar-Mor contacts in June 2000, the record reflects that Mooney instructed Carner to call plaintiff shortly after learning of Phar-Mor's rumored financing needs, and Carner's "deal note" explicitly references information supplied by Mirza in his June 14, 2000, letter. Whether defendant

possessed that information through other means, and hence did not truly benefit from the information supplied by plaintiff, is yet another question of material fact that is not properly resolved in the context of a summary judgment motion.

As a reasonable fee for his services, plaintiff requests a commission of ½% of the $150 million loan, or $750,000. As noted earlier, the court concludes that the undisputed facts establish that plaintiff was not the "procuring cause" of the loan, and is therefore not entitled to the commission customarily awarded to a business opportunity finder. Nonetheless, drawing all inferences in favor of plaintiff, the court cannot hold unequivocally that plaintiff is not entitled to some payment for the services he rendered. Indeed, according to plaintiff's deposition testimony, he communicated his expectation of a fee to defendant on more than one occasion, and defendant thereafter persisted in utilizing information provided by plaintiff.

Although the court is dubious that the functions performed by plaintiff entitle him to $750,000, the amount that he could have received as a commission for acting as a loan finder, the court will not deny plaintiff an opportunity to argue the value of his services at trial. Thus, the court denies defendant's motion for summary judgment with respect to plaintiff's quantum meruit claim, to the extent that this claim is not based on plaintiff's work as a loan finder.

## CONCLUSION

For the reasons stated herein, defendant's motion for summary judgment is granted with respect to Count I of the complaint, and denied with respect to Count II, to the extent that Count II is not based on plaintiff's services as a loan finder.

**ENTER:** November 8, 2002

Robert W. Gettleman
United States District Judge

9